# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00283-CR

---

**Douglas Jacob, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 403RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-16-202579, THE HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Douglas Jacob appeals his conviction for robbery. *See* Tex. Penal Code § 29.02. The jury assessed punishment, which was enhanced under habitual-offender provisions of the Texas Penal Code, at seventy-five years' imprisonment. *See id*. § 12.42. On appeal, Jacob contends that the evidence is insufficient to support his conviction because the State did not prove that an assault occurred "in the course of committing theft" as required for the offense of robbery. *See id*. § 29.02. We will affirm the district court's judgment of conviction.

### BACKGROUND[1]

The events giving rise to the offense occurred when the victim was walking from her parked car down Sixth Street before dawn to begin her shift as a waitress at the Driskill

---

[1] The facts are summarized from the testimony and exhibits admitted into evidence at trial.

Hotel. About a block and a half from the hotel, she passed a man on the sidewalk who was walking in the opposite direction. The man, later identified as Jacob, turned around and started following her. Jacob told police that he asked her "for [a] couple dollars." He also asked her if he could have a second of her time. Despite indicating that she could not help him, Jacob repeatedly asked her for a second of her time and he became "pretty frustrated" when she refused him. The victim testified that no one else was around and that she was scared. She continued walking toward the employees' entrance that she had been instructed to use, located in an alley behind the hotel. Jacob continued following her and making his requests, stating that she was "pissing him off."

When she still refused him, Jacob grabbed her shoulder, spun her around, and punched her in the face, knocking her backward into a chain-link fence. As Jacob stepped forward to hit her again, the victim "ducked and ran." She testified that he reached for her backpack and pulled on it. Using the backpack, he tried pulling her to the ground. She stumbled. Jacob dragged her and ran, shoving her into a loading-dock area across the alley. There he resumed punching her in the face and attempted to throw her head into a corner of the concrete ramp for the loading dock.[2] He also attempted to kick her face.

The victim testified that "there was so much pain and it was terrifying and my--I felt my life was in danger." She called 911, and the jury heard a recording of her report of the offense. She told the 911 operator twice that she was an employee of the Driskill Hotel and that she had "just been beat up by some homeless guy on the way to work." She denied that Jacob

---

[2] The jury saw security-camera video that captured part of the assault in the hotel alley. The spots of darkness and angle of the security camera in the alley prevented depiction of the events closer to the chain-link fence and in the loading-dock area.

had any weapons, but that he just "hit really hard." The victim testified that during her assault she was "screaming for security the entire time" and "very loud[ly]."

One of the victim's coworkers, Bernard Mollahan, ran from the Driskill Hotel into the alley after hearing a woman screaming. Mollahan saw a man with his pants down standing over a woman lying on the ground, and Mollahan yelled at him to get away from her. Jacob left down the alley. Mollahan saw that the victim was holding her face, bleeding from her lip, and had been hit. He called 911 while running down the alley after Jacob. Mollahan then asked some nearby construction workers for assistance, and they helped chase Jacob down Congress Avenue. Enrique Gutierrez, an assistant superintendent for a contractor at the Aloft/Element hotel construction site, testified that he chased Jacob, kicked his feet out from underneath him, got on top of him, and held him down until police arrived.

After police interviewed witnesses at the scene and reviewed security-camera video from the Driskill Hotel, Jacob was arrested and taken into custody. Jacob received *Miranda* warnings from the police officer who questioned him at the scene and from the detective who later questioned him at the police station.[3] During questioning at the scene, Jacob told the police officer that he asked the victim for "a couple dollars." When the officer asked specifically, "Why'd you punch her?" Jacob responded, "Money."

At the police station, Jacob told a detective that he smoked crack cocaine earlier that morning, that he used crack "every day," that he wanted "some more money," and that he wanted to "get some more drugs." Jacob also claimed that the victim swung at him first. Jacob stated that he "walked beside her [the victim]," "asked her for a couple dollars, she swung, and I

---

[3] The jury saw the patrol-car and police-station video recordings of Jacob's statements to the officer and the detective.

hit her." He later acknowledged that she might have swung at him after he was trying to get the money and he punched her, when she was trying to protect herself. Jacob specified that he hit her "in the face." Because Jacob was discovered at the scene with his pants down, the detective asked whether Jacob also intended to commit another offense:

Detective: So you had no sexual intent at all, it was just your intent to rob her?

Jacob:     No sir, just to rob her.

Detective: Just to rob her. And you just wanted, you wanted to get money from
           her to go, to get more drugs?

Jacob:     Get more drugs.

At the close of evidence, Jacob moved for a directed verdict, which the district court denied. The district court's charge contained two offenses for the jury's consideration, robbery and the lesser-included offense of assault. The jury convicted Jacob of robbery and assessed punishment. The district court rendered judgment in accordance with the jury's verdict. This appeal followed.

**DISCUSSION**

**Elements of robbery and standard of review**

A person commits the offense of robbery if, in the course of committing theft, he intentionally, knowingly, or recklessly causes bodily injury to another, or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02. Jacob does not challenge the evidence that he assaulted the victim. He contends only that the evidence is insufficient to support his robbery conviction because the State did not

prove: (1) that the assault occurred "in the course of committing theft" and (2) his intent to obtain or maintain the victim's property when he assaulted her.

Applying a legal-sufficiency standard, we consider the evidence in the light most favorable to the verdict and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). We defer to the jury's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We apply the same standard to direct and circumstantial evidence. *Id*. Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Nisbett*, 552 S.W.3d at 262. Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id*.; *see Crawford v. State*, 889 S.W.2d 582, 584 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (noting that intent to steal property may be inferred from defendant's actions).

The Penal Code defines "[i]n the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." Tex. Penal Code § 29.01(1). Actual commission of theft is not a prerequisite to the commission of robbery because the gravamen of robbery is the assaultive conduct, not the theft. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992); *Crawford*, 889 S.W.2d at 584 (citing *Green*); *see Bunton v. State*, No. 03-05-00717-CR, 2007 Tex. App. LEXIS 5082, at *12 (Tex. App.—Austin June 27, 2007, no pet.) (mem. op., not designated for publication) (noting that proof of completed theft is unnecessary to establish robbery). Further,

5

in a prosecution for robbery of money, it is immaterial how much money is involved. *Crawford*, 889 S.W.2d at 584.

Intent to steal may be inferred from the defendant's actions or conduct. *Johnson v. State*, 541 S.W.2d 185, 187 (Tex. Crim. App. 1976) (noting that verbal demand for property is unnecessary to prove intent to steal); *Banks v. State*, 471 S.W.2d 811, 812 (Tex. Crim. App. 1971) (concluding that intent to steal "should be determined from the words, acts and conduct of the accused"). Drug abuse and financial difficulties may be considered as circumstantial evidence of a defendant's motive to steal. *See Cooper v. State*, 67 S.W.3d 221, 223-24 (Tex. Crim. App. 2002).

**Sufficient evidence of challenged elements of robbery offense**

Here, the record shows that Jacob assaulted the victim while in the act of committing, or attempting to commit theft, and that he intended to obtain the victim's property. *See* Tex. Penal Code §§ 29.01, .02. By his own admission to law-enforcement officers—in videotaped statements that the jury saw and heard at trial—Jacob approached the victim, asked her for money, chased her, and hit her in the face after she did not give any money to him. Jacob told the investigating officer at the scene that he punched the victim for money. Jacob told the detective that he intended to rob the victim to get more drugs and that he used crack "every day." According to the victim, Jacob approached her while she was walking to work, asked her for a second of her time, became frustrated when she did not stop walking, told her that she was "pissing him off," followed her into an alley, and assaulted her.

Jacob notes that the victim did not mention his request for money, but we defer to the jury's resolution of any conflicts in the evidence, as well as the jury's weighing of the testimony and drawing of reasonable inferences from basic facts to ultimate facts. *See Isassi*,

6

330 S.W.3d at 638. The jury could have reasonably inferred Jacob's intent to commit theft from his conduct of chasing the victim into the alley and assaulting her in a dark loading-dock area off of the alley and his admissions to police that he asked her for money and wanted it for drugs. Moreover, the jury could have reasonably inferred that Mollahan intervened before Jacob completed his theft.

Our sister court in Houston affirmed a robbery conviction on similar facts. *See Crawford v. State*, 889 S.W.2d 582, 584 (Tex. App.—Houston [14th Dist.] 1994, no pet.). In *Crawford*, the defendant approached the victim, demanded a quarter from her, and hit her in the face when she refused. *Id*. at 583. The Houston Court stated that the jury could have reasonably concluded the defendant "assaulted [the victim] in an attempt to steal money or that the violence accompanied his escape after an attempted theft." *Id*. at 584. Additionally, the Houston Court determined that the defendant's statement to the victim and his actions constituted sufficient evidence for the jury's conclusion that the defendant intended to steal money from the victim. *Id*. at 584; *see also Lewis v. State*, No. 05-12-00837-CR, 2013 LEXIS 13607, at *11-13, *16 (Tex. App.—Dallas Oct. 31, 2013, no pet.) (op., not designated for publication) (concluding that sufficient evidence supported robbery conviction, despite conflicting testimony about whether drug-addicted defendant took victim's purse, where evidence showed that defendant approached victim in parking lot at night saying "Excuse me, ma'am," assaulted her, and ran when he saw approaching car). The defendant in *Crawford*, like Jacob, fled after assaulting his victim, noted that the offense was originally reported as an assault, and convicted him of robbery despite being given a charge on the lesser-included offense of assault. *See Crawford*, 889 S.W.2d at 583-84.

We conclude that the combined and cumulative force of all the evidence at trial, viewed in the light most favorable to the jury's verdict, was sufficient to allow a rational jury to

7

find beyond a reasonable doubt that Jacob committed the charged offense of robbery. *See* Tex. Penal Code § 29.02; *Jackson*, 443 U.S. at 319; *Nisbett*, 552 S.W.3d at 262; *Crawford*, 889 S.W.2d at 584; *see also Lewis*, 2013 LEXIS 13607, at *16; *Bunton*, 2007 Tex. App. LEXIS 5082, at *16. Accordingly, we overrule Jacob's appellate issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Smith

Affirmed

Filed:   August 30, 2019

Do Not Publish